**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

THE ESTATE OF CARLOS BORROTO and
MARITZA CLARK and ERIC FRIAS, as
Administrators Ad Prosequendum for the
Estate of CARLOS BORROTO,

        Plaintiffs,

        v.

CFG HEALTH SYSTEMS, LLC; HUDSON
COUNTY CORRECTIONAL CENTER;
RONALD P. EDWARDS; DOROTHEA
KALINISAN; SAMONTE SOFRADO;
COUNTY OF HUDSON; HACKENSACK
MERIDIAN PALISADES MEDICAL
CENTER; DR. FRANK SANTOS; et al.,

        Defendants.

Civil Action No. 2:19-cv-17148
(MCA)(JBC)

**PLAINTIFFS' OMNIBUS BRIEF IN OPPOSITION TO THE
MOTIONS IN LIMINE FILED BY DEFENDANTS CFG HEALTH
SYSTEMS, LLC AND SAMONTE SOFRADO (DE 159–163)**

**LAW OFFICES OF LORNE M. REITER, LLC**
Lorne M. Reiter, Esq.
Laura C. Johnson, Esq.
124 First Avenue
Atlantic Highlands, New Jersey 07716
(732) 747-9555

Counsel for Plaintiffs

**Dated: April 27, 2026**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

LEGAL STANDARD.........................................................................................................4

ARGUMENT .....................................................................................................................5

POINT I. ...........................................................................................................................5

EVIDENCE OF POST-INCIDENT MEASURES IS ADMISSIBLE FOR FEASIBILITY, IMPEACHMENT, AND OTHER NON-PROHIBITED PURPOSES UNDER RULE 407, AND THIS COURT ALREADY RELIED ON IT IN SUSTAINING THE MONELL CLAIMS. ........................................................................................................................5

POINT II. ..........................................................................................................................8

CFG'S MOTION TO BAR STANDARD-OF-CARE EVIDENCE FAILS BECAUSE THE COURT HAS HELD PLAINTIFFS' EVIDENCE SUFFICIENT, BECAUSE THE FEDERAL CLAIMS DO NOT REQUIRE A NEGLIGENCE-STYLE EXPERT, AND BECAUSE CFG MISREPRESENTS THE HAYWARD DEPOSITION.....................................................8

POINT III..........................................................................................................................11

DEBBIE DIAZ AND NATALIE MATEO WERE TIMELY DISCLOSED UNDER RULE 26(e) AT THE COURT'S DIRECTION; EXCLUSION OF THE STATUTORY BENEFICIARIES' GUARDIANS WOULD WORK A MANIFEST INJUSTICE. ........11

POINT IV...........................................................................................................................15

THE HUDSON COUNTY MEDICAL REVIEW PANEL REPORT AND DR. SIMRING'S UNDERLYING REPORT ARE ADMISSIBLE PUBLIC RECORDS UNDER RULE 803(8)(A)(iii) AND BEECH AIRCRAFT..........................................................................15

POINT V.............................................................................................................................17

THE NRI HEALTH SERVICES QUALITY ASSESSMENT REPORTS ARE ADMISSIBLE PUBLIC RECORDS, AND THE TWO PRE-INCIDENT REPORTS CANNOT BE "SUBSEQUENT" REMEDIAL MEASURES. ...............................................................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Beech Aircraft Corp. v. Rainey,* 488 U.S. 153 (1988) ........................................................4, 15, 18

*Estate of Soberal v. City of Jersey City,* 529 F. Supp. 2d 477 (D.N.J. 2007) ................................7

*Estelle v. Gamble,* 429 U.S. 97 (1976) ....................................................................................2, 9

*Green v. Bittner,* 85 N.J. 1 (1980)...............................................................................................14

*Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710 (3d Cir. 1997) ................................3, 5, 12, 14

*Maddox v. City of Los Angeles,* 792 F.2d 1408 (9th Cir. 1986) ......................................................7

*Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir. 1977)............ passim

*Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153 (3d Cir. 1995)....................................................12

*Palakovic v. Wetzel,* 854 F.3d 209 (3d Cir. 2017) .......................................................................2, 9

*Quinn v. Consol. Freightways Corp.,* 283 F.3d 572 (3d Cir. 2002) ..............................................12

*Rosenberg v. Cahill,* 99 N.J. 318 (1985)........................................................................................9

*Specht v. Jensen,* 863 F.2d 700 (10th Cir. 1988) (en banc) ............................................................7

*Thomas v. Cumberland Cnty.,* 749 F.3d 217 (3d Cir. 2014)..............................................6, 16, 19

*United States v. Lockett,* 919 F.2d 585 (9th Cir. 1990) ................................................................16

*Walden v. Ga.-Pac. Corp.,* 126 F.3d 506 (3d Cir. 1997).................................................................4

**Statutes and Rules**

42 U.S.C. § 1983.........................................................................................................................2, 8

Fed. R. Civ. P. 26(e) ............................................................................................................3, 4, 11, 12

Fed. R. Civ. P. 37(c)(1)..................................................................................................................12

Fed. R. Evid. 407 ................................................................................................................... passim

Fed. R. Evid. 702 ............................................................................................................................7

Fed. R. Evid. 803(8)(A)(iii) .................................................................................................. passim

Fed. R. Evid. 901 ..........................................................................................................................16

## PRELIMINARY STATEMENT

CFG Health Systems, LLC and Samonte Sofrado (collectively, "CFG") have filed five motions in limine supported by a single 25-page omnibus brief that addresses seven categories of evidence. Five of those categories are addressed in this opposition. The Kucsma challenge is addressed in plaintiffs' opposition to Palisades Medical Center's parallel motion (ECF Doc. 167); the Hayward Daubert challenge is addressed in plaintiffs' opposition to the parallel Daubert motion. Neither is briefed here. They share a common defect: each asks the Court to exclude evidence on which the Court itself relied, in whole or in part, when it sustained plaintiffs' federal and common-law claims at summary judgment. Stripped to its essentials, CFG's motion seeks a do-over of summary judgment by the back door.

CFG asks the Court to bar evidence of the corrective action plan implemented after Carlos Borroto's death. Yet this Court quoted that very plan as evidence supporting the deliberate-indifference and Monell claims. SJ Op. 24–25. CFG asks the Court to bar the Hudson County Medical Review Panel report. Yet this Court quoted at length the MRP's findings that Nurse Practitioner Sofrado deviated from accepted standards. SJ Op. 25. CFG asks the Court to bar the NRI Health Services Quality Assessments. Yet this Court relied on the October 2017 and March 2018 NRI reports as the documentary foundation for the Monell claim against Hudson County. SJ Op. 4–6. CFG asks the Court to bar all standard-of-care evidence concerning Sofrado. Yet this Court has already addressed that very argument and held it premature: "the Medical Defendants' arguments regarding the admissibility of Dr. Hayward's report and testimony are premature and must be challenged in a Daubert motion." SJ Op. 47.

Each of CFG's five requests fails for distinct, independently sufficient reasons. **Point I** addresses the post-incident-measures motion. Federal Rule of Evidence 407 expressly permits the

use of subsequent measures for purposes other than proving negligence, including "impeachment or, if disputed, proving ownership, control, or the feasibility of precautionary measures." Feasibility is squarely controverted here: every defense clinical expert opines that suicide-watch measures were not appropriate or practical at intake, and the corrective action plan implemented immediately after Borroto's death, mandating exactly the safeguards plaintiffs say were required, is the most direct possible refutation of that defense. Plaintiffs are also entitled to use the evidence to show notice and knowledge for the Monell claims, a use Rule 407 does not touch.

**Point II** addresses the motion to bar all standard-of-care evidence concerning the medical defendants. That argument fails for at least four independent reasons. First, this Court has already considered and rejected the same admissibility challenge to Dr. Hayward's opinions and has held the issue properly resolved through a timely Daubert motion. SJ Op. 47. Second, the federal claims under 42 U.S.C. § 1983 turn on deliberate indifference under *Estelle* and *Palakovic,* not on professional negligence; standard-of-care testimony is a sufficiency question for the common-law claims, not a threshold to the federal claims. Third, plaintiffs have four independent SOC sources for the conduct of Sofrado, Maina, and Kalinisan: the MRP report, the Simring report, the Hayward report, and the Adee report. Fourth, CFG's entire argument rests on a misrepresentation of the Hayward deposition. CFG asserts that Hayward "confirmed at deposition that his opinions pertain exclusively to CFG and the County" (CFG Br. 4); the transcript shows the opposite. When asked whether his opinions extended to other defendants, Hayward answered: "I don't look at my opinions as being directed towards specific defendants." Hayward Day 2 Tr. 38:1–3. Hayward gave express opinions about the standard of care applicable to Sofrado at multiple points, including testifying that suicide-risk assessments "need to be conducted by a qualified mental health clinician" as "the standard of care across the country," Hayward Day 2 Tr. 19:4–6, and that nurse

2

practitioners "all over the country" include mental health evaluations and suicide risk assessments under the applicable standard of care, Hayward Day 2 Tr. 32:18–22.

**Point III** addresses CFG's motion to bar Debbie Diaz and Natalie Mateo, the legal guardians of Carlos Borroto's two minor children. The argument is that they were never disclosed in discovery. They were. On March 17, 2026, plaintiffs served Rule 26(e) Supplemental Disclosures expressly identifying both Diaz and Mateo by name and address as persons with knowledge of claims and damages. The disclosure was not made on the eve of trial out of any tactical motivation; it was made at the express direction of this Court, which by Text Orders dated January 23 and March 2, 2026 required plaintiffs to produce the beneficiaries (or their legal guardians) at the in-person settlement conference of March 18, 2026. Plaintiffs complied. CFG received the supplemental disclosure on March 17, 2026, more than six weeks ago. CFG has taken no steps to depose either witness. CFG has propounded no follow-up discovery. The witnesses' identities, their roles as guardians of the children of the decedent, and their relevance to damages have been known to all parties since the original Complaint in 2019, and the Kucsma economic report, served in 2023, expressly names them. Plaintiffs offer to make Diaz and Mateo available for deposition at any mutually convenient time before the May 11, 2026 trial. Under those facts, the *Pennypack* factors do not justify exclusion; on the contrary, exclusion would constitute the "extreme" sanction the Third Circuit reserves for cases of willful deception or "flagrant disregard" of a court order, *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997), and would work a manifest injustice on two minor children whose guardians are the only living witnesses able to describe what was lost when their father was found hanging in a jail cell.

**Points IV and V** address the motions to exclude the Hudson County Medical Review Panel report (with the incorporated Simring report) and the four NRI Health Services Quality Assessment

3

reports. Plaintiffs have addressed those documents in detail in Point VII of their omnibus brief in support of their own motions in limine, and they incorporate that argument here by reference. The short answer is that each document was commissioned by Hudson County government pursuant to public authority: the NRI assessments under Hudson County Board of Chosen Freeholders Resolution No. 519-8-207, and the MRP under direct County commission, and each contains "factual findings from a legally authorized investigation," making it admissible under Rule 803(8)(A)(iii). *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169–70 (1988). The two NRI reports issued before Borroto's death (October 2017 and March 2018) cannot, as a matter of basic chronology, be "subsequent" remedial measures, and they are also admissible to show notice and knowledge for the Monell claim. The September 2018 NRI report and the MRP report, post-dating Borroto's death, are admissible for the same non-hearsay purposes and, as to the corrective action plan, under the express feasibility exception of Rule 407.

CFG's motion should be denied in its entirety.

## LEGAL STANDARD

A motion in limine is appropriate "only when the evidence is clearly inadmissible on all potential grounds." *Walden v. Ga.-Pac. Corp.,* 126 F.3d 506, 518 n.10 (3d Cir. 1997). Where, as here, evidence has multiple permissible uses or its admissibility depends on the trial record, the proper course is to defer ruling until the evidence is offered in context. *Id.*

Federal Rule of Evidence 403 permits exclusion only where "probative value is *substantially outweighed*" by unfair prejudice. The balance is struck in favor of admission. *Id.* Rule 26(e) imposes a continuing duty to supplement initial disclosures, and exclusion under Rule 37(c)(1) is committed to the Court's discretion under the *Pennypack* framework, with exclusion

4

described by the Third Circuit as an "extreme" remedy. *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997).

## ARGUMENT
### POINT I
### EVIDENCE OF POST-INCIDENT MEASURES IS ADMISSIBLE FOR FEASIBILITY, IMPEACHMENT, AND OTHER NON-PROHIBITED PURPOSES UNDER RULE 407, AND THIS COURT ALREADY RELIED ON IT IN SUSTAINING THE MONELL CLAIMS.

CFG asks the Court to bar all evidence of post-Borroto-death actions taken at HCCC, including: termination of CFG's contract with Hudson County; the establishment of an advisory board to review medical care at the facility; the establishment of a grievance review board; the construction of a new infirmary wing; and the corrective action plan implemented by CFG itself. CFG's rationale is Rule 407, which states that subsequent measures cannot be admitted to prove negligence, culpable conduct, a defect, or a need for warning. CFG, however, ignores the second sentence of Rule 407: such evidence *may* be admitted for "another purpose, such as impeachment or, if disputed, proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407.

### A.  Feasibility Is Squarely Controverted by CFG's Own Defense Experts.

Plaintiffs' theory of liability is straightforward: HCCC and CFG should have placed Borroto on a level of monitoring (close watch or suicide watch) commensurate with the documented risk available in the facility's own electronic medical records. CFG's defense experts argue, in substance, that the level of monitoring plaintiffs say was required was not feasible: that requiring close watch in this circumstance would be impractical, would over-classify routine intakes, would strain HCCC's resources, and was not consistent with prevailing professional practice.

5

That position puts feasibility squarely in dispute. Once feasibility is contested, evidence of subsequent measures is admissible to rebut the defense. The corrective action plan implemented at HCCC after Borroto's death, imposing a minimum 72-hour close watch on inmates admitted with a history of suicide attempts, psychiatric ER clearance, or psychiatric facility clearance, directly demonstrates the feasibility of the very measure plaintiffs say was required. SJ Op. 24–25. The Court already cited that fact as evidence supporting the deliberate-indifference and Monell claims. *Id.* Plaintiffs are entitled to put it before the jury for the same purpose Rule 407 expressly preserves.

## B.  The Evidence Is Independently Admissible to Show Notice and Knowledge for the Monell Claim.

Rule 407 by its terms applies only when subsequent measures are offered to prove "negligence," "culpable conduct," "a defect in a product," "a defect in a product's design," or "a need for a warning or instruction." Fed. R. Evid. 407. The rule does not bar admission for other purposes. The same evidence (the post-Borroto corrective action plan, the contract termination, the new infirmary wing) is independently relevant to the Monell deliberate-indifference claim because it shows what Hudson County and CFG knew was wrong with the system, when they came to know it, and what they had the means and capacity to do about it. *See Thomas v. Cumberland Cnty.,* 749 F.3d 217, 222–23 (3d Cir. 2014) (notice of pattern of constitutional violations and failure to act on it sustains Monell claim).

That use of the evidence is not addressed by the policy concerns Rule 407 was designed to vindicate. The rule's rationale is to encourage tortfeasors to fix things. Where a corrective action is offered not to prove the prior conduct was negligent but to prove that the institutional defendants knew the system was broken and had the capacity to fix it, no policy of Rule 407 is offended.

## C.  CFG's Authorities Address Only Use to Prove Negligence, and Do Not Apply.

6

CFG relies principally on *Estate of Soberal v. City of Jersey City,* 529 F. Supp. 2d 477 (D.N.J. 2007), and on cases collected in a footnote in Soberal at 491 n.7. None of those authorities controls here, because none addresses use of subsequent measures for the express FRE 407 exceptions on which plaintiffs rely. *Soberal* itself addressed the offer of remedial-action evidence to prove the underlying constitutional tort, a use Rule 407 plainly precludes. The Soberal footnote's collected authorities are to the same effect: each excluded subsequent measures only when offered to prove negligence or culpable conduct, not when offered for feasibility, impeachment, or to show notice/knowledge in support of a Monell claim.[1]

*Maddox v. City of Los Angeles,* 792 F.2d 1408 (9th Cir. 1986), is also offered without acknowledging that *Maddox* expressly recognized that subsequent measures may be offered for purposes "other than to prove the alleged negligence," citing the impeachment exception of Rule 407. *Maddox,* 792 F.2d at 1417. CFG's authorities thus prove the rule plaintiffs invoke.

**D.  This Court Already Considered the Same Evidence in Sustaining the Claims.**

This Court's September 27, 2024 summary judgment opinion repeatedly relied on the post-Borroto corrective action plan and on the post-Borroto investigations as evidence sustaining the Monell and deliberate-indifference claims. SJ Op. 4–6 (NRI reports), 24–25 (corrective action plan), 25–26 (MRP and Simring findings). Whatever weight Rule 407 might have if the issue arrived to the Court fresh, the rule does not permit CFG to ask the Court to rule that the same evidence on which the Court found a triable issue is inadmissible at the trial of that very issue. The motion as to post-incident measures should be denied. To the extent CFG seeks to limit the use of any specific item of remedial evidence (for example, by precluding a party from arguing in

---

[1] CFG also cites *Specht v. Jensen,* 863 F.2d 700 (10th Cir. 1988) (en banc), as "*Specht v. Jensen*, 863 F.2d 700, 701 (10th Cir. 1998)." CFG Br. 3. The correct year is 1988. The *Specht* en banc opinion did not address Rule 407 at all; it addressed the inadmissibility of an attorney expert's legal conclusions under Rule 702. *See Specht,* 863 F.2d at 703–09. To the extent CFG cites it for Rule 407, it is being misread.

summation that termination of CFG's contract is itself an admission of culpable conduct), the proper vehicle is a contemporaneous Rule 105 limiting instruction at trial, not categorical pretrial exclusion.

**POINT II**
**CFG'S MOTION TO BAR STANDARD-OF-CARE EVIDENCE FAILS BECAUSE THE COURT HAS HELD PLAINTIFFS' EVIDENCE SUFFICIENT, BECAUSE THE FEDERAL CLAIMS DO NOT REQUIRE A NEGLIGENCE-STYLE EXPERT, AND BECAUSE CFG MISREPRESENTS THE HAYWARD DEPOSITION.**

CFG's second motion seeks to exclude all standard-of-care evidence relating to NP Sofrado, RN Kalinisan, Mental Health Counselor Maina, and "all other personnel employed by and/or supervised by CFG." CFG Br. 5. CFG's argument is that no plaintiff's expert has rendered SOC opinions specific to those individual medical professionals. The argument fails on four independent grounds.

**A.  This Court Has Already Considered and Rejected the Same Argument.**

On the same record, the Medical Defendants argued at summary judgment that plaintiffs lacked SOC evidence specific to the medical defendants and that Hayward's opinions could not supply it. This Court rejected the argument, holding that "the Medical Defendants' arguments regarding the admissibility of Dr. Hayward's report and testimony are premature and must be challenged in a Daubert motion." SJ Op. 47. The Court further held that the record contained sufficient SOC evidence to reach the jury, expressly citing Hayward's report, the MRP report, and the Simring report. SJ Op. 25–26, 39–41, 47. CFG's present motion is, in substance, a renewed summary judgment motion on a record the Court has already adjudicated.

**B.  The Federal Claims Do Not Require Professional-Negligence Standard-of-Care Testimony.**

8

The centerpiece of this case is the federal cause of action under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need. The standard for that claim is not the medical malpractice standard borrowed from New Jersey common law. It is the constitutional standard articulated in *Estelle v. Gamble,* 429 U.S. 97, 104 (1976), and elaborated for suicide cases in *Palakovic v. Wetzel,* 854 F.3d 209, 222 (3d Cir. 2017). What the federal jury must find is that the defendants knew of and disregarded a substantial risk of serious harm, and that their disregard was sufficiently culpable to amount to deliberate indifference. CFG's case-in-chief framing of plaintiffs' SOC evidence as a *Rosenberg v. Cahill* common-law-malpractice question, CFG Br. 5–6, ignores that the constitutional claim does not require the same form of proof.

### C.  Plaintiffs Have Four Independent Standard-of-Care Sources.

Even taking CFG's framing on its own terms, the record contains four independent sources of standard-of-care evidence applicable to the medical defendants. **First,** the Medical Review Panel report concludes that Sofrado deviated from accepted medical standards of care: "N.P. Samonte deviated from accepted medical standards of care" in failing to obtain a detailed mental health history, failing to review prior medical records, failing to perform a proper suicide risk assessment, and failing to order any level of monitoring. SJ Op. 25 (quoting MRP). The MRP report is a public record admissible under Rule 803(8)(A)(iii). **Second,** the report of Dr. Steven Simring, the independent psychiatrist commissioned by Hudson County government, concludes that "Mr. Borroto was improperly evaluated and treated by the HCCC from the day he arrived" and that those failures "led directly to his death by suicide." SJ Op. 26. **Third,** Dr. Hayward's report addresses both the systemic failures of CFG and the conduct of NP Sofrado and Mental Health Counselor Maina specifically, including the standard of care for suicide risk assessments by nurse practitioners and the requirement that mental health screenings be performed by qualified mental health clinicians. **Fourth,** Paul Adee, plaintiffs' corrections expert, addresses the HCCC

intake protocols and the standard of care for receipt of arresting officer information, the communication of suicide risk indicia, and the placement and classification decision.

Each of those sources is admissible. The MRP and Simring reports are admissible under Rule 803(8)(A)(iii) for the reasons set out in Plaintiffs' Brief in Support of Plaintiffs' Motions in Limine, Point VII ("Plaintiffs' MIL Br.") at 23–26. The Hayward and Adee reports were timely served as expert disclosures, were the subject of full depositions, and have not been the subject of any timely Daubert motion until now. CFG's argument that no SOC evidence exists ignores the actual evidentiary record.

### D.  CFG Misrepresents Hayward's Deposition.

CFG's factual centerpiece is the assertion that Dr. Hayward "confirmed at deposition that his opinions pertain exclusively to CFG and the County." CFG Br. 4. The cited transcript pages do not support that assertion. The actual exchange reads:

Q. Is that opinion also directed to any other defendants?

A. So I don't look at my opinions as being directed towards specific defendants. I guess I'm not clear what you're asking there.

Hayward Day 2 Tr. 38:1–3. Far from a concession that his opinions "pertain exclusively to CFG and the County," the witness expressly declined to characterize his opinions as confined to any particular defendant. The transcript also contains express SOC opinions specifically applicable to NP Sofrado:

Q. … the suicide risk assessment must be conducted by a mental health professional, correct?

A. So that is the standard of care across the country, that suicide risk assessments need to be conducted by a qualified mental health clinician.

Hayward Day 2 Tr. 19:1–6. And:

10

Q. Are you – are you rendering an opinion concerning what the scope of practice is and the standard of care for a nurse practitioner conducting a mental – suicide risk assessment?

A. … in terms of standard of care, nurse practitioners all over the country, they do include mental health evaluations and often suicide risk assessments as part of their …

Hayward Day 2 Tr. 32:11–33:8. The transcript places the standard of care for nurse practitioners performing suicide risk assessments squarely on the page, and squarely within Hayward's opinions. The motion premised on the opposite proposition cannot be granted.

**POINT III**
**DEBBIE DIAZ AND NATALIE MATEO WERE TIMELY DISCLOSED UNDER RULE 26(e) AT THE COURT'S DIRECTION; EXCLUSION OF THE STATUTORY BENEFICIARIES' GUARDIANS WOULD WORK A MANIFEST INJUSTICE.**

Debbie Diaz is the legal guardian of Carleyn Borroto, the decedent's minor daughter. Natalie Mateo is the mother and legal guardian of Carlos Jayden Borroto, the decedent's minor son. Together they are the only living adults in a position to describe the children's relationships with their father, the impact of his death on their daily lives, and the human values the children have lost. Plaintiffs identified them by name, address, and substantive role in a Rule 26(e) Supplemental Disclosure served on every defense counsel of record on March 17, 2026, at the express direction of this Court. CFG now asks the Court to bar them from testifying. Granting the motion would not advance any rule, expose any prejudice, or serve any policy. It would deny two children their father's damages case.

**A.  Plaintiffs Served a Timely Rule 26(e) Supplemental Disclosure on March 17, 2026.**
By Text Orders dated January 23, 2026 and March 2, 2026, this Court directed plaintiffs to produce, in person at the settlement conference scheduled for March 18, 2026, the beneficiaries of the Estate of Carlos Borroto or their legal guardians. Plaintiffs complied. On March 17, 2026,

11

counsel for plaintiffs served on counsel for CFG, counsel for Hudson County, counsel for Palisades Medical Center, and counsel for Dr. Santos a Rule 26(e) Supplemental Disclosure expressly identifying:

- Natalie Mateo (Mother and legal guardian of Jayden Borroto, a minor), 2650 Kingman Ave. SE, Palm Bay, FL 32909; and
- Debbie Diaz (Grandmother and legal guardian of Carleyn Borroto, a minor), 15 Lexington Ave., Bayonne, NJ 07002,

each as a person with information regarding plaintiffs' claims and damages. The disclosure was accompanied by a transmittal letter expressly tying it to the Court's Text Orders requiring production of the beneficiaries' guardians at the settlement conference. The disclosure complied with Rule 26(e)'s requirement to supplement "in a timely manner" when additional information becomes available, here the Court's identification of an event making the witnesses' trial role specific.

### B. The *Pennypack* Factors Foreclose Exclusion in All Events.

Even setting aside the timeliness of the March 17, 2026 disclosure, exclusion under Rule 37(c)(1) is committed to the Court's discretion under the four-factor framework of *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904 (3d Cir. 1977). The factors are: (i) prejudice or surprise to the party against whom the witness would be called; (ii) the ability to cure that prejudice; (iii) the extent to which calling the witness would disrupt the orderly trial process; and (iv) bad faith or willfulness of the proponent. The Third Circuit has emphasized that exclusion under this framework is an "extreme" sanction, not normally to be imposed absent a showing of willful deception or "flagrant disregard" of a court order. *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Pennypack,* 559 F.2d at 905); *see also Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir. 1995); *Quinn v. Consol. Freightways Corp.,* 283 F.3d 572, 577–78 (3d Cir. 2002). Each factor weighs against exclusion.

12

(i) **Surprise and prejudice.** CFG cannot credibly claim surprise. The existence of Borroto's two minor children has been disclosed in this litigation since the original Complaint was filed in August 2019. ECF Doc. 1. The children's identities, dates of birth, and surviving parent/guardian status have been a feature of the case since pre-suit; the very damages calculation CFG now seeks to attack (the Kucsma economic report, served in 2023) expressly identifies Natalie Mateo as the mother of Jayden and Debbie Diaz as the guardian of Carleyn. CFG's defense corrections expert and damages expert each engaged with that report. The witnesses' names, roles, and relevance are the opposite of new information.[2]

(ii) **Ability to cure.** Trial does not begin until May 11, 2026. CFG has had the formal supplemental disclosure for more than six weeks and has taken no steps whatever to depose Mateo or Diaz, propound a single supplemental interrogatory to either, or seek any other follow-up discovery. To resolve any residual concern, plaintiffs hereby **consent to the deposition of Natalie Mateo and Debbie Diaz at any mutually convenient time before trial,** and will make the witnesses available on short notice. Where the cure is so readily available and the party seeking exclusion has shown no interest in availing itself, the prejudice factor cannot support exclusion. *See Pennypack,* 559 F.2d at 905 (the "extreme" sanction of exclusion is unjustified where prejudice can be cured).

(iii) **Disruption of trial.** Mateo and Diaz will give factual damages testimony only: their relationships with the decedent, what he provided to his children, and the impact of his death. Their testimony does not require expert disclosure, will not require new exhibits, and is unlikely to extend the trial by more than a session each. The proposed pretrial deposition will permit CFG to

---

[2] CFG's motion concedes the point. CFG describes Mateo and Diaz as "mothers of Mr. Borroto's minor children," representing "the interests of the only people who could recover damages." CFG Br. 6. That is not surprise. That is recognition that the witnesses are precisely who plaintiffs have always said they were.

cabin direct, prepare cross, and obtain any additional materials it identifies. Trial will not be disrupted.

**(iv) Bad faith.** The disclosure was not timed to disadvantage CFG. It was made on the day before the Court-ordered settlement conference, in direct response to and in compliance with the Court's own orders. There is no allegation of bad faith here, and CFG identifies none. CFG's argument, that plaintiffs "amended their Automatic Disclosures" on "the eve of trial," CFG Br. 5–6, omits the central reason the supplement was made: the Court ordered it.

### C. Exclusion Would Work a Manifest Injustice on the Statutory Beneficiaries.

The *Pennypack* analysis is also informed by the consequences of exclusion. The Third Circuit has repeatedly emphasized that exclusion of "critical evidence" is reserved for cases of willful deception or "flagrant disregard" of a court order. *Konstantopoulos,* 112 F.3d at 719; *Pennypack,* 559 F.2d at 905. This is plainly such a case. As CFG itself observes, the statutory beneficiaries of the wrongful death claim are the decedent's two minor children. CFG Br. 6. The only living adults in a position to give first-person testimony about the children's relationships with their father are their guardians. Excluding their testimony would not just hamper plaintiffs' case; it would deny the statutory beneficiaries the only available means to prove the human values they lost under the Wrongful Death Act and *Green v. Bittner,* 85 N.J. 1 (1980).

That outcome would be the inverse of the policy Rule 26 was designed to vindicate. Rule 26 exists to ensure that all parties have access to the same factual base and can prepare. CFG has had the supplemental disclosure for six weeks, has done nothing with it, and now seeks to translate its own inaction into the permanent silencing of the children's only witnesses. The Court should decline. The motion to exclude Diaz and Mateo should be denied. To the extent CFG identifies any specific area where it represents that further preparation is required, plaintiffs will accommodate a deposition of either witness at a date and location of CFG's choosing prior to trial.

14

**POINT IV**
**THE HUDSON COUNTY MEDICAL REVIEW PANEL REPORT AND**
**DR. SIMRING'S UNDERLYING REPORT ARE ADMISSIBLE PUBLIC**
**RECORDS UNDER RULE 803(8)(A)(iii) AND BEECH AIRCRAFT.**

Plaintiffs have addressed the admissibility of the MRP report and the underlying Simring report in detail in Point VII of their omnibus brief in support of their own motions in limine, and they incorporate that argument here by reference. Plaintiffs' MIL Br. 23–26. This Point IV briefly responds to the specific arguments CFG advances.

**A.  The MRP Report Satisfies Rule 803(8)(A)(iii) Under *Beech Aircraft*.**

Federal Rule of Evidence 803(8)(A)(iii) creates a hearsay exception for records of a public office that set out factual findings from a legally authorized investigation. The Supreme Court has held unanimously that "factual findings" include evaluative conclusions and opinions drawn from underlying data, not only raw observations. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169–70 (1988). The MRP report squarely satisfies that standard. The MRP was assembled by Hudson County government, a public entity, specifically to investigate the circumstances of Borroto's death. The panel comprised a retired Superior Court Judge, an attorney, and two physicians, with an independent psychiatrist (Dr. Simring) commissioned to provide the underlying clinical analysis. The investigation and the report were unmistakably the product of public authority.

CFG's argument that the MRP and Simring reports are not 803(8) public records because the MRP and Simring "are not public or even quasi-public entities," CFG Br. 8, misreads the rule. Rule 803(8)(A)(iii) does not require that the investigation be conducted by full-time public employees. The rule reaches "factual findings from a legally authorized investigation." Investigations conducted by experts retained by a public office are plainly within the rule's text. *Beech Aircraft* itself involved a Navy report drafted in significant part by retained experts. 488

15

U.S. at 158. The relevant question is whether the investigation was conducted under public authority. Here, it plainly was.

### B.  The Reports Are Independently Admissible to Show Notice and Knowledge.

Even if any portion of the MRP or Simring reports were excluded as hearsay, the reports are independently admissible for non-hearsay purposes. They establish what Hudson County and CFG officials learned about the failures at HCCC after Borroto's death, supporting plaintiffs' claim that CFG and the County had a duty to address those failures and that subsequent inaction is itself constitutionally significant. *See Thomas v. Cumberland Cnty.,* 749 F.3d 217, 222–23 (3d Cir. 2014). That use does not implicate the hearsay rule at all.

### C.  Authentication Is a Trial Issue Under Rule 901, Not a Pretrial Exclusion Basis.

CFG argues that the MRP report "does not bear any signature and has never been authenticated." CFG Br. 7. Authentication under Rule 901 is a foundational trial-time question, not a basis for pretrial in limine exclusion. The MRP report was produced in this litigation by counsel for Hudson County itself, bearing County Bates labels (HUD/BORROTO 00419 et seq.); Hudson County has never disputed that the document originated with the County or that it accurately reflects the report received and acted upon by County officials. Plaintiffs anticipate authentication through any of several routes: a Rule 902 self-authentication argument; a stipulation among parties (which plaintiffs will solicit prior to trial); foundation testimony from a County records custodian or from Director Edwards (whose deposition testimony already addressed receipt of post-mortem reports); or judicial notice. *See, e.g., United States v. Lockett,* 919 F.2d 585, 591 (9th Cir. 1990) (Rule 901 authentication standard requires only "evidence sufficient to support a finding"); *Beech Aircraft,* 488 U.S. at 167–68. The proper time for any authentication objection is when the document is offered, not now.

16

**D. The MRP Report Is Not a "Subsequent Remedial Measure."**

CFG's alternative argument that the MRP report should be excluded as a subsequent remedial measure under Rule 407 confuses an investigation with a remedial measure. The MRP did not implement any change in policy or practice. It investigated and reported. An investigative report is not a measure that, if taken earlier, would have prevented the harm; it is a record of what happened. Investigations conducted after an incident are categorically distinct from the remedial measures that follow them; otherwise, every accident report ever generated would be inadmissible. The Advisory Committee Note and the case law uniformly confirm that investigative reports of this character fall outside Rule 407's preclusion. *See* Fed. R. Evid. 407 advisory committee's note (rule limited to "subsequent remedial measures").

**POINT V**
**THE NRI HEALTH SERVICES QUALITY ASSESSMENT REPORTS**
**ARE ADMISSIBLE PUBLIC RECORDS, AND THE TWO PRE-INCIDENT**
**REPORTS CANNOT BE "SUBSEQUENT" REMEDIAL MEASURES.**

Plaintiffs' brief in support of their own motions in limine sets out the full 803(8)(A)(iii) analysis for the NRI Health Services Quality Assessment reports, including the September 2017 site visit report (issued October 2017), the January 2018 site visit report (issued March 2018), the post-Borroto July 2018 site visit report (issued September 2018), and the September 2019 final report. Plaintiffs' MIL Br. 23–26. Plaintiffs incorporate that argument here by reference. This Point V responds to CFG's specific arguments.

**A. The NRI Reports Were Commissioned by Public Resolution and Constitute 803(8)**
**Public Records.**

On August 10, 2017, the Hudson County Board of Chosen Freeholders adopted Resolution No. 519-8-207, authorizing a $90,000 contract with NCCHC Resources, Inc. to perform independent medical monitoring of HCCC for a period running from August 10, 2017 through August 10, 2018. SJ Op. 4–5. The Resolution expressly identified the engagement's purpose as

17

evaluating health services at HCCC in light of recent inmate deaths and identifying "health care issues that need correction or improvement." *Id.* The four NRI reports produced under that Resolution are records of "factual findings from a legally authorized investigation" conducted on behalf of a public office, admissible under Rule 803(8)(A)(iii) and *Beech Aircraft.* CFG's argument that NCCHC Resources is "a private organization" and therefore not within Rule 803(8), CFG Br. 8, again confuses the contractor with the investigating authority. The investigating authority is Hudson County. NCCHC Resources is the public office's retained instrument. The result is the same one *Beech Aircraft* reached for retained Navy investigators.

**B.  The October 2017 and March 2018 NRI Reports Predate Borroto's Death.**

CFG's primary objection to the NRI reports is that they are "subsequent remedial measures." CFG Br. 8–9 ("All reports attached hereto as Exhibit C must be precluded on the same bases as the MRP report … as articulated in Point IV above"). That objection cannot apply to the October 2017 NRI report (the report of the September 6–8, 2017 NRI site visit) or to the March 2018 NRI report (the report of the January 29–31, 2018 site visit). Borroto died on March 25, 2018. Both pre-incident reports were issued before that date. They cannot, by definition, be "subsequent" measures relative to the conduct giving rise to this case. Their admission is not even arguably affected by Rule 407.

Those pre-incident reports are also independently admissible to show notice and knowledge. The October 2017 report identified specific deficiencies in intake nursing screening, intake screening policies, suicide prevention policies, and the care of suicidal inmates. SJ Op. 5. The March 2018 follow-up reported that a number of those areas remained deficient and identified suicide monitoring and patient assessment as ongoing concerns, two months before Borroto's death. SJ Op. 5–6. Director Edwards testified that he received the reports, that he implemented some of the recommendations, and that he did not implement others. SJ Op. 6. That combination

18

of contemporaneous documented warning and selective inaction is the very content of a Monell deliberate-indifference claim. *See Thomas v. Cumberland Cnty.,* 749 F.3d 217, 222–23 (3d Cir. 2014).

### C.  The September 2018 NRI Report Is Admissible for Feasibility Under Rule 407's Express Exception.

The September 2018 NRI follow-up report (covering the post-Borroto July 16–18, 2018 site visit) is the only NRI report that arguably falls on the "subsequent" side of the chronology. It is nevertheless admissible for the same reasons set out in Point I: feasibility is squarely controverted by CFG's defense experts, and the September 2018 report, documenting which corrective measures had been implemented and which had not, directly responds to that defense. It is admissible under the express feasibility exception of Rule 407, and additionally for notice/knowledge purposes related to the post-Borroto Monell evidence.

### CONCLUSION

For the reasons set out above, plaintiffs respectfully request that the Court deny CFG's motions in limine (DE 159–163) in their entirety.

Dated: April 27, 2026

Respectfully submitted,

**LAW OFFICES OF LORNE M. REITER, LLC**
By: /s/ Lorne M. Reiter
    Lorne M. Reiter, Esq.
    Laura C. Johnson, Esq.
124 First Avenue
Atlantic Highlands, New Jersey 07716
(732) 747-9555

Counsel for Plaintiffs

19